UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | NO. 2:04-CR-14 |
| | ) | |
| TALMADGE CODY | ) | |

### **O R D E R**

This criminal matter is before the Court to address the defendant's timely Amended Motion for a New Trial. [Doc. 153]. Fed. R. Civ. P. 33 provides, in pertinent part, that "the court may . . . grant a new trial if the interest of justice so requires." The decision to grant or deny a motion for new trial is within the discretion of the trial court and will be reversed only for an abuse of that discretion. *United States v. Davis*, 15 F. 3d 526 (6th Cir. 1994); *United States v. Glover*, 21 F. 3d 133, 138 (6th Cir. 1994). The defendant bears the burden of proving that a new trial should be granted. *United States v. Seago*, 930 F. 2d 482, 488 (6th Cir. 1991).

In deciding a motion for new trial, the only question is what the interest of justice requires. While the court has discretion in ruling on the motion, the court should apply the harmless error and plain error provisions of Rule 52 and refuse to grant a new trial where the substantial rights of the defendant were not affected. *United States v. Wilkerson*, 251 F. 3d 273, 280 (1st Cir. 2001). New trial motions are disfavored and should be granted with caution, *United States v. Willis*, 257 F. 3d 636

(6th Cir.2001), especially since the defendant is attacking a jury verdict that is presumptively valid.

The defendant was tried before this Court and a jury on a six count indictment which charged him in Count 1 with a bank robbery by use of a dangerous weapon; in Count 2 with using, carrying, and brandishing a firearm in a crime of violence as charged in Count 1; in Count 3 with aiding and abetting Linda Cody with obstructing, delaying, or affecting interstate commerce by robbery, which is also known as a Hobbs Act robbery; in Count 4 with aiding and abetting Linda Cody in using and carrying of a firearm during a crime of violence as charged in Count 3; in Count 5 with escape from the Greene County Detention Center where he had been confined at the direction of the Attorney General; and in Count 6 with using and carrying of a firearm during in a crime of violence as charged in Count 5. A jury convicted the defendant of all six counts on February 16, 2005.

The defendant has raised twenty (20) grounds for a new trial, and although the Court finds that one of the grounds raised requires a new trial, each has been considered separately by the Court. With the exception of the introduction of the unredacted order of detention, the Court finds no merit in any of the other issues raised by the defendant. To the extent any error was committed, it was either harmless or failed to constitute plain error affecting the substantial rights of the defendant.

## THE UNREDACTED ORDER OF DETENTION

The most troubling of the grounds asserted by the defendant in support of a new trial is the introduction at trial of the entire order of detention entered pre-trial by the United States Magistrate Judge. The order, offered by the government to establish one of the elements of the escape charge,[1] that is, that the defendant was in the custody of the Attorney General, contains certain findings by the Magistrate Judge concerning the strength of the government's case against the defendant.

In pertinent part, the Magistrate Judge's order, in the section on page 2 entitled "Written Statement of Reasons for Detention", reads as follows:

> I find that the credible testimony and information submitted at the hearing establishes by clear and convincing evidence as follows:
>
> The robbery of the video store involved (1) use of a gun; (2) threat of deadly force; and (3) an actual battery (defendant Linda Cody struck a customer with the gun). The defendant Talmadge Cody although not in the store during the robbery, obviously was an accomplice, inasmuch as he was waiting outside the store while Mrs. Cody accomplished the robbery.
>
> The bank robbery was accomplished by both defendants, who were both armed. Those firearms were brandished, not only at the bank employees, but also at bank customers.

---

[1] The United States argues that it was the defendant himself who precipitated the necessity for the government to introduce the document in the first place by his refusal to stipulate the fact that he was lawfully in the custody of the United States. Such an argument overlooks, however, the fact that the defendant was not required to stipulate to <u>any</u> facts and that a redacted version of the order would have served the same purpose.

3

The crimes with which these defendants are charged are "crimes of violence" in the sense of 18 U.S.C. § 3142(f)(1)(A) and 18 U.S.C. § 3156(a)(4).

There is evidence that both defendants were motivated to do what they did because of dire financial straits. There also is evidence that the defendants had fatalistic attitudes and would have welcomed a shoot-out with police. Moreover, there is evidence of suicidal ideation.

The order, without any redaction, was admitted into evidence at the trial without objection from the defendant. In fact, the Court inquired of defendant's counsel as to any objection defendant might have and defendant's counsel affirmatively indicated that there was no objection. No limiting instruction of any kind was requested by the defendant and none was given by the Court at the time of the introduction of the order of detention.[2]

The defendant now draws an analogy between the Magistrate Judge's findings in the order of detention and impermissible judicial commentary on the defendant's guilt, arguing that "[t]he introduction of Magistrate Judge Inman's findings of guilt is constitutionally indistinguishable from a direct judicial comment on Mr. Cody's guilt." The government, on the other hand, argues that the order of detention was admissible with respect to the escape charge and that "any surplusage that should

---

[2] The Court did instruct the jury that it was the sole judge of the facts in the case and was to disregard anything said by the Court during the course of the trial, except for the Court's instructions on the law. Such an instruction, however, is not sufficient to offset the prejudicial effect of introduction of the comments of the Magistrate Judge. *See United States v. Cisneros*, 491 F. 2d 1068 (5th Cir. 1974).

4

have been redacted was clearly cumulative of other evidence presented."[3] In a subsequent response to the defendant's motion, the government also disputes the analogy made by the defendant between the findings contained in the order of detention and judicial commentary on the defendant's guilt arguing that these were "merely comments contained on a subsequent page of a document detaining Cody pending trial" and that "the factual basis for the Court's reasoning came from Cody's own confession which was introduced at trial." The government further argues that the introduction of the detention order was harmless error.

While a federal judge may comment on the evidence, he must do so with great care and may not unduly prejudice the jury. *United States v. Murdock*, 290 U.S. 389, 54 S. Ct. 223, 78 L. Ed. 381 (1933); *Quercia v. United States*, 289 U.S. 466, 53 S. Ct. 698, 77 L. Ed. 1321 (1933). Some comments by the trial judge may so usurp the jury's role as fact finder to be incurable and to constitute reversible error. *Murdock*; *United States v. Yates*, 553 F. 2d 518 (6th Cir. 1977). Comments of the judge going directly to the matter of the guilt of a defendant in a criminal case are particularly troublesome. *Murdock; Quercia*.

The essence of the right to a jury trial guaranteed by the Sixth Amendment is the "right to have the jury, rather than the judge, reach the requisite finding of guilt."

---

[3] This argument by the government seems to suggest that the jury would properly have learned of the Magistrate Judge's conclusion in some other way. This Court cannot imagine any scenario through which the jury would otherwise have become aware of the Magistrate Judge's findings.

5

*United States v. Booker*, ____ U.S. ____, 125 S. Ct. 738, 748, 160 L. Ed. 2d 621 (2005); *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 476-478, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); *Sullivan v. Louisiana*, 508 U.S. 275, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). "The judge's opinion is likely to influence strongly the opinion of the individual jurors when they come to consider their verdict and judge the credibility of witnesses." *United States v. Vinson*, 606 F. 2d 149 (6th Cir. 1979), *cert. denied*, 444 U.S. 1074 (1980). The jury is highly sensitive to every judicial utterance and the judge's words to the jury carry an authority bordering on the irrefutable. *Moody v. U.S.*, 377 F. 2d 175, 179 (5th Cir. 1967). Quoting Chief Justice Hughes in *Quercia*, the Sixth Circuit has stated:

> The influence of the trial judge on the jury is necessarily and properly of great weight and his slightest word or inclination is received with deference, and may prove controlling. This Court has accordingly emphasized the duty of the trial judge to use great care that an expression of opinion upon the evidence should be so given as not to mislead, *and especially that it should not be one-sided.* (emphasis added)

*Yates*, 553 F. 2d at 521.

Undeniably, the comments at issue were not oral comments made by the trial judge in this case but were, nevertheless, comments of a judge of this Court touching directly on the matter of the guilt of the defendant. And while the comments were not specifically called to the attention of the jury and no argument was directed

6

to the comments by the government, the order of detention was made available to the jury during its deliberations. The comments themselves go directly to the matter of the defendant's guilt as to the bank robbery, Hobbs Act robbery of the video store and the gun branishment charges.[4]

As the government correctly argues, the defendant is entitled to "a fair trial, not a perfect one," *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S. Ct. 1431, 1436, 98 L. Ed. 2d 674 (1986), because an "error – free, perfect trial" is not humanly possible. *United States v. Hasting*, 461 U.S. 499, 508, 103 S. Ct. 1974, 1980, 76 L. Ed. 2d 96 (1983). Harmless errors, therefore, that have little, if any, likelihood of having changed the result of the trial are to be disregarded. Harmless errors are errors which do not affect "substantial rights". *Id.*; *Fed. R. Crim. P.* 52(a). A reviewing court engages in harmless error analysis under Rule 52(a) only when alleged errors are properly preserved both at trial and on appeal. *United States v. Segines*, 17 F. 3d 847, 851 (6th Cir. 1994).

On the other hand, plain error that affects substantial rights may be considered even though it was not brought to the court's attention. *Fed. R. Crim. P.* 52(b). To constitute plain error, there must have "indeed been an error", the error

---

[4] The United States also has suggested that the defendant did not seriously contest any of the charges except the Hurdy Gurdy Video robbery and gun brandishment charges and that the error was, therefore, clearly harmless as to the other charges. This argument overlooks the fact, however, that the defendant, regardless of the trial strategy of his counsel, placed all charges at issue simply by his plea of "not guilty". Once he did so, the burden was on the government to prove his guilt in a fundamentally fair trial.

7

must be "plain", *i.e.*, "clear" or "obvious" and the plain error must have affected "substantial rights." *United States v. Olano*, 507 U.S. 725, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). The "plain error" must have been prejudicial to the defendant, using the same "harmless error" analysis as required by Rule 52(a), "with one important difference: it is the defendant rather than the government who bears the burden of persuasion with respect to prejudice." There is, however, a special category of forfeited errors that can be corrected regardless of their affect on the outcome and which are presumed prejudicial to the defendant even though the defendant cannot make a specific showing of prejudice. *Id.* The court should correct a plain forfeited error affecting substantial rights only if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.; United States v. Thomas*, 11 F. 3d 620 (6th Cir. 1993).

In the instant case, the United States has grudgingly conceded that the admission of the unredacted order of detention was error and there can be little question that this error was plain, clear and obvious. This Court's analysis, therefore, will be directed to the third and fourth prongs of the plain error analysis.

The right to trial by an impartial jury in criminal cases is a fundamental one. By the same token, judicial comment on the petitioner's guilt in such a criminal case is a fundamental error "most likely to remain firmly lodged in the memory of the jury and to excite a prejudice which would preclude a fair and dispassionate

8

consideration of the evidence." *Quercia*, 289 U.S. at 472. "Moreover, any reference to extra judicial evidence by the trial judge destroys the fundamental premise of any trial – that the ultimate decision rests solely upon evidence presented by the parties within the confines of the Rules of Evidence." *Scott v. Ohio*, 480 U.S. 923, 925, 107 S. Ct. 1386, 94 L. Ed. 2d 699 (1987). The right of the accused to a trial by jury and to have his guilt or innocence decided by 12 laymen is "a constitutional line across which [the trial judge] cannot go." The court cannot direct a verdict of guilty in criminal cases, even if the facts are undisputed. *United States v. Smith*, 399 F. 2d 896 (6th Cir. 1968). This Court cannot find that placing before the jury the opinion of a judge of this Court that guilt of the very crimes for which the defendant is on trial has been established "by clear and convincing evidence" is harmless within the meaning of Rule 52. The defendant's failure to make timely objection does not preclude a new trial. " . . . [T]he comments adversely affected the substantial right of the defendant to have his defense fairly heard and to have the question of his guilt or innocence decided by the jury and not by the court." *See Yates* at 521. It does not make any difference that the defendant would likely have been convicted even absent the admission of the unredacted detention order nor is it likely that the error could have been corrected by an immediate curative instruction. In any event, no such instruction was requested or given by the Court.

The government suggests to the Court that the error, if it requires the grant of a new trial at all, should not justify a new trial on the escape charge which was not mentioned in the detention order and, which in fact, had not even occurred at the time the detention order was entered. While this may be a close question, the Court in this case views the error made as being so fundamental that it likely infected the entire judicial process and this Court cannot say with any certainty that defendant was not likewise prejudiced with respect to his trial on the escape charge as well. In addition, the finding "by clear and convincing evidence" by the Magistrate Judge that the "defendants had fatalistic attitudes and would have welcomed a shoot-out with police" is the type of finding which would be highly suggestive to any reasonable jury that the defendant was not only guilty of committing crimes of violence but that he would also not hesitate to assault a police officer in an effort to escape from lawful custody.

This Court regrets that a new trial is required in this case because the proof of defendant's guilt is strong and this Court believes that a jury's verdict should not lightly be set aside. This Court likewise regrets the cost and inconvenience to witnesses associated with a new trial, not to mention the emotional trauma associated with a re-trial for the victims of defendant's crimes. Motions for new trial are not favored and should be granted only with great caution, *Willis* at 649; however, this Court finds that the error committed fundamentally violated the defendant's right to have his guilt or innocence determined by a jury as guaranteed by the Sixth Amend-

ment to the United States Constitution. A new trial is ORDERED on this ground.

## THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

While it is unnecessary for the Court to consider the claim by the defendant that he was deprived of his right to the effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution in view of the Court's grant of a new trial on other grounds, the Court feels compelled to address one of the issues raised by the defendant. The two prong test announced by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), is the benchmark in determining in retrospect whether assistance of counsel has been constitutionally adequate. To meet the requirements of the test, the defendant must show that counsel's representation was deficient to the extent that representation failed below "an objective standard of reasonableness" *Rickman v. Bell*, 131 F. 3d 1150 (6th Cir. 1997), *Cert. denied*, 523 U.S. 1133 (1998) and must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. In making the determination as to whether or not counsel's representation was deficient, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Rickman* at 689.

With the possible exception of the failure to object to the unredacted order of detention, this Court FINDS no ineffective assistance of counsel on the part of

11

defendant's trial counsel. The defendant specifically alleges that the failure of his counsel to conduct a reasonable investigation of a potential alibi witness violates his right to the effective assistance of counsel; however, the defendant's claim rests upon his allegation that he informed counsel of the existence of a potential alibi witness before his trial. Both Talmadge Cody and his sister have testified that defendant's trial counsel was informed around Thanksgiving, 2004, of the existence of an alibi witness, Shauntrell Manuel, who was allegedly with the defendant on the morning of the robbery of the Greene County Bank. Defendant's trial counsel, on the other hand, testified unequivocally under oath that he was never informed of the potential existence of any alibi witness. The potential alibi witness also testified at this Court's hearing on defendant's motion.

Simply put, this Court finds neither the allegations that Mr. Bowman was informed pretrial of the existence of an alibi witness nor the testimony of the alibi witness himself to be credible. While there are numerous reasons leading the Court to this conclusion, this Court finds Mr. Cody's silence on the issue at a hearing conducted just before the completion of his trial to be determinative. Shortly before the conclusion of the trial in this matter, the defendant requested that he be permitted to terminate his trial counsel and asked for the appointment of substitute counsel. During the *ex parte* hearing on that request, this Court specifically asked Mr. Cody

about his complaints concerning counsel's representation of him. Despite being given every opportunity to do so, this defendant made absolutely no reference to the possible existence of any alibi witness nor did he describe any specific complaints he might have had about trial counsel's representation of him at that point.

It is also significant that Mr. Manuel, the alleged alibi witness, despite being subpoenaed by the government to testify at the trial of this matter, never made the government's attorney aware that he was allegedly with the defendant at the time of the robbery. Mr. Manuel also never made any attempt to contact defendant's trial counsel at any time, before or after the trial, to suggest to him that Mr. Cody was being wrongfully accused or that he had been wrongfully convicted. Not only that, had the defendant's trial counsel been informed of the existence of an alibi witness, had he then interviewed Mr. Manuel, had the interview been consistent with Mr. Manuel's in court testimony, trial counsel would likely have concluded that Mr. Manuel was not credible and that calling him as a witness would have done considerable damage to Mr. Cody's already slim prospects of being acquitted on these charges. Defendant's claim of ineffective assistance of counsel is without merit.

**CONCLUSION:**

For the reasons set out herein, it is hereby ORDERED that the defendant's Motion for New Trial based upon the admission of the unredacted Order of Detention

13

is **GRANTED**, and this case is set for trial at 9:00 a.m. on Tuesday, January 24, 2006.

The sentencing hearing, previously scheduled for December 5, 2005, is **CANCELLED**.


ENTER:

                                              s/J. RONNIE GREER
                                            UNITED STATES DISTRICT JUDGE