UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | No. 2:04-CR-14 |
| | ) | |
| TALMADGE CODY | ) | |

REPORT AND RECOMMENDATION

Defendant has filed a "renewed" motion to dismiss Counts 4 and 5 of the indictment [Doc. 200]. That motion has been referred to the Magistrate Judge pursuant to the standing order of the Court and 28 U.S.C. § 626.

First of all, defendant mis-spoke in his motion when he asks that Counts 4 and 5 of his indictment be dismissed. He states that Counts 4 and 5 of the indictment concern the robbery of the Hurdy Gurdy Video Store. In a *prior* indictment, Counts 4 and 5 did address the robbery of the Hurdy Gurdy Video Store. However, in the most recent superseding indictment [Doc. 97], it is Counts 3 and 4 that refer to the robbery of the Hurdy Gurdy Video Store; Count 5 of the current indictment alleges that defendant escaped from custody. Therefore, it will be assumed that defendant asks that Counts 3 and 4 of the indictment be dismissed.

As defendant did in an identical motion filed prior to his first trial, he asserts that the robbery of the Hurdy Gurdy Video Store did not meet the constitutional requirement of a substantial effect on interstate commerce, and therefore federal court

has no jurisdiction.

Defendant's previous motion was extensively researched and analyzed in a Report and Recommendation which was subsequently affirmed and adopted by the District Judge. However, for the sake of convenience, rather than merely referring to that prior Report and Recommendation, it will be reproduced herein, altered only to conform to the current indictment, the prior trial, and the pending trial:

Counts 3 and 4 charge defendant with the armed robbery of a private business, *viz*, the Hurdy Gurdy Video located on the Asheville Highway in Greeneville, Tennessee, on February 15, 2004. Defendant argues that Counts 3 and 4, charging him with the armed robbery of the private business, should be dismissed because the offense lacks the requisite connection to interstate commerce.

Count 3 charges defendant with violating 18 U.S.C. § 1951, the "Hobbs Act":

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.[1]

The Sixth Circuit has held, to support a conviction under the Hobbs Act, the government is required to demonstrate no more than a *de minimis* effect on interstate

---

[1] Count 4 charges defendant with using a firearm in connection with the offense set forth in Count 3; clearly, Count 4 rises or falls with Count 3.

commerce. "There is no requirement that there be an actual effect on interstate commerce – only a realistic probability that [an offense] will have an effect on interstate commerce." *United States v. Peete*, 9l9 F.2d 1158, 1174 (6th Cir. 1990), cited in *United States v. Wang*, 222 F.3d 234, 237 (6th Cir. 2000). The Sixth Circuit has held that this "*de minimis* effect on interstate commerce" standard still is the rule, notwithstanding the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549 (1995). *Wang, supra,* at 237-238.[2] Nevertheless, defendant argues that only $200 was stolen from the Hurdy Gurdy Video Store and that this paltry sum does not meet even the *de minimis* standard set by the Sixth Circuit, as a result of which this Court should dismiss Counts 3 and 4.

In its response to defendant's initial and essentially identical motion, the government argued that *pretrial* disposition of this issue was inappropriate, and that this question was one for the jury, subject to the District Judge's prerogative to dismiss these counts under Fed.R.Crim.P. 29.

Mr. Hugh Rader, the owner of the Hurdy Gurdy Video Store, testified at the earlier pretrial hearing. From Mr. Rader's testimony the following information was

---

[2]*Lopez* referred to a *substantial* effect on interstate commerce which, at first blush, would seem to be in irreconcilable conflict with a *de minimis* standard. But *Wang* held that where the cumulative effect of *de minimis* activities have a substantial effect on interstate commerce, *Lopez* is satisfied. *Wang, supra,* at 238. The *de minimis* standard for prosecution under the Hobbs Act does not always apply in cases in which the victim is an individual, as opposed to a business entity. *Id.* But the Hurdy Gurdy Video Store undeniably was a business; the fact that it was a sole proprietorship is of no legal significance.

learned: The Hurdy Gurdy Video Store is a sole proprietorship and, to quote Mr. Rader, is not a "mom and pop" operation but merely a "pop." He purchases video tapes of Hollywood movies, and video games (on, it is assumed, compact disks), from various vendors, and then rents those tapes and disks to customers. The bulk of his video tape purchases are made from a business located outside the state of Tennessee, although many of the video tapes are shipped from a warehouse located in Memphis, Tennessee. Sometimes a particular video tape is shipped from a warehouse in another state. Obviously, the video tapes themselves are manufactured outside the state of Tennessee, most likely in California where most of the movies themselves are made. Virtually all of Mr. Rader's video games are purchased from a business in Florida, from whence the compact disks are shipped. Thus, Mr. Rader's stock in trade – video taped movies and computer games – are acquired through interstate purchases and shipments.

Due to the proximity of Greeneville, Tennessee, to the North Carolina state line, some of his customers (likely, relatively few) are from North Carolina. Thus, to this marginal extent, Mr. Rader rents video tapes in interstate commerce.

With respect to the robbery's impact on Mr. Rader's business, the robbery occurred on a Sunday night at approximately 9:30 p.m., thirty minutes before closing time. There was a customer in the store at the time of the robbery, and it is unknown whether that customer (who was injured during the course of the robbery)

4

consummated his business with Mr. Rader after the robbery. Under the circumstances, it is extremely doubtful that he did. Mr. Rader has no way of knowing, rather obviously, whether he lost any customers during the next thirty minutes before he would have closed at 10:00. Absent a potential customer telling Mr. Rader that he was deterred by the presence of a police cordon and police cars with blue lights flashing, how could Mr. Rader possibly know? It stands to reason that if there were any potential renters of video tapes or video games who intended to patronize Mr. Rader's store that evening between 9:30 and 10:00, they certainly would have elected to go elsewhere in light of all the activity in and about the store.

    Lastly, Mr. Rader testified that he had a rather simple formula for the purchase of movies and games to place in his inventory: At the end of each month, Mr. Rader subtracts his expenses from his gross receipts and then takes a certain percentage of those "profits" to purchase movies and games. When asked by defense counsel whether the loss of $200 (by Mr. Rader's estimation) caused him to purchase less movies or games than he would have purchased if there had been no robbery, once again Mr. Rader gave a commonsensical answer: He has absolutely no way of knowing; after all, his profits vary from month to month and he simply allocates a percentage of those varying profits each month to the purchase of games and movies. Clearly, to the extent that he was deprived of $200, that necessarily affected his profit and thereby affected the purchase of games or movies. Mr. Rader never testified what

5

Case 2:04-cr-00014-JRG   Document 232   Filed 03/08/06   Page 5 of 8   PageID #: 132

percentage of his profits was used to purchase games or movies, nor did he testify as to the average cost of a game or movie.

Two hundred dollars is not much money, but it would have affected, albeit very slightly, Mr. Rader's ability to purchase movies and games. In light of the small sum of money, one can speculate that he likely was deprived of the ability to purchase only one or two movies or tapes. But whether one movie or one hundred movies, there was still an effect on interstate commerce. In the case of one hundred movies, it could be described as a substantial effect. In the case of one movie, the effect on interstate commerce truly would be *de minimis*. But *de minimis* is all that the law requires to sustain a conviction under the Hobbs Act. To attempt to quantify the extent of the impact on interstate commerce effectively substitutes an ascertainable, definite amount, e.g., a percentage of gross receipts or a percentage of inventory, in place of the *de minimis* requirement that now exists in Sixth Circuit jurisprudence.

The Court considered this issue long and hard, at first pondering whether *de minimis* was an absolute amount, quantifiable in some sense, or whether it is relative to the victim in the sense that one man's *de minimis* is another man's entire estate. But upon reflection, the Court concludes that it had been pondering how many angels can dance upon the head of a pin; *de minimis* means *de minimis*; the term connotes something of minimal importance or minuscule, something that is just barely beyond being nothing at all, the tiniest of amounts. To attempt to quantify the word, whether

6

in absolute or relative terms, flies in the face of the meaning of the word itself. In the case of the Hobbs Act, it means *some* effect on interstate commerce – not much, but some, even if but a tiny amount.

In retrospect, this Court – specifically, the Magistrate Judge thereof – erred when it allowed defendant at the earlier hearing to present evidence, *pretrial*, regarding his motion to dismiss. An effect on interstate commerce is an element of the offense, which must be proven to the jury. It is conceivable that the government will call witnesses other than, or in addition to, Mr. Rader to prove a *de minimis* effect on interstate commerce. It also is conceivable that Mr. Rader, if given fair notice of what information is important in a Hobbs Act prosecution, would investigate the relevant facts and be prepared to answer the questions more fully.[3] Assistant United States Attorney Reeves argued that this issue was not appropriate for pretrial disposition; that the facts, including the jurisdictional facts, should be submitted to the jury, subject to the District Judge's prerogative to dismiss these counts under Rule 29. Assistant U.S. Attorney Reeves was correct.[4]

It is respectfully recommended that defendant's Motion to Dismiss, to the extent he asks that Counts 3 and 4 be dismissed prior to trial, be DENIED, obviously without

---

[3]Mr. Rader obviously was not particularly prepared to answer these questions at the first hearing, simply because he had no idea of the legal niceties involved.

[4]Recalling that defendant has been previously tried and convicted on this charge, apparently District Judge Greer felt that the proof regarding a nexus to interstate commerce was sufficient enough to warrant submission of the case to the jury.

prejudice to move for a judgment of acquittal on these counts pursuant to Fed.R.Crim.P. 29 at the appropriate time.

Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985). The objecting party shall procure and file simultaneously with the objections a transcript of any testimony before the Magistrate Judge. If a transcript is not filed simultaneously with the objections, the party filing the objections shall either (1) file a declaration that the transcript was ordered before the objections were filed and the date on which the party expects the transcript to be filed, **or** (2) affirmatively state that a transcript of the testimony presented to the Magistrate Judge is not needed for resolution of the objections. If a party files objections to this report and recommendation, the attorney for that party shall provide a copy of such objections to the opposing counsel on the same day the objections are filed, either by hand-delivery or facsimile transmission. The opposing counsel shall file his/her response to the objections within five business days of the date the objections are filed.

Respectfully submitted,

                                      s/ Dennis H. Inman
                                      United States Magistrate Judge