UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| TALMADGE CODY, )<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF )<br>AMERICA, )<br>Respondent. ) | NOS. 2:04-CR-14<br>2:08-CV-235 |

## **MEMORANDUM OPINION**

Talmadge Cody ("petitioner" or "Cody"), a federal prisoner, has filed a "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody," [Doc. 307]. The United States has respond in opposition, [Doc. 315]. The matter is, therefore, ripe for disposition.

The Court has reviewed the motion, the government's response and the transcripts and records of the prior proceedings and has determined that the files and records in the case conclusively establish that the petitioner is not entitled to relief under § 2255. For the reasons which follow, the petitioner's § 2255 motion will be DENIED.

### I.     **Procedural Background**

Cody was indicted, along with his wife, Linda Cody, in a five court indictment returned by the federal grand jury on February 24, 2004. Cody was charged in Count One of the indictment with robbing the Greene County Bank, in Count Three with using and carrying a firearm during and in relation to that bank robbery, in Count Four with aiding and abetting in the Hobbs Act robbery of Hurdy Gurdy Video, and Count Five with aiding and abetting in the using and carrying of a firearm during and in relation to the Hobbs Act robbery, [Doc. 1]. On March 23, 2004, the federal grand

jury returned a superceding indictment which additionally charged the petitioner with escape (Count Six), and using and carrying a firearm during and in relation to a violent crime, that is, the escape (Count Seven). The indictment also charged petitioner's son, Marshall Cody, with aiding and abetting petitioner's escape (Count Eight) and harboring and concealing petitioner (Count 9), [Doc. 26].

After guilty pleas by both Marshall Cody and Linda Cody, a second superceding indictment was returned as to Cody alone on September 28, 2004. A third superceding indictment was filed on February 8, 2005, charging the defendant with robbing the Greene County Bank, aided and abetted by Linda Cody (Count One), using, carrying and brandishing an assault rifle during and in relation to that robbery (Count Two), aiding and abetting Linda Cody in a Hobbs Act robbery (Count Three), aiding and abetting Linda Cody in using and carrying a firearm during and in relation to the Hobbs Act robbery (Count Four), escape from federal custody (Count Five), and using and carrying a firearm during and in relation to that escape (Count Six).

Following a jury trial on February 15 and 16, 2005, petitioner was convicted on all six counts of the third superceding indictment, [Doc. 101]. Cody subsequently moved for a judgment of acquittal and a new trial, [Doc. 151], and the Court conducted an evidentiary hearing. The Court subsequently denied the motion for judgment of acquittal, [Doc. 186], but granted the motion for new trial because of the admission into evidence of an unredacted order of detention in relation to the escape charge, [Doc. 188]. The government did not appeal the grant of a new trial.

Prior to the retrial, Cody filed a motion to suppress his statements to law enforcement agents based on his mental and emotional state at the time of the statements, arguing that he did not knowingly and voluntarily waive his right to remain silent or his right to counsel, [Doc. 209]. After

2

an evidentiary hearing conducted by the magistrate judge, the magistrate judge found no evidence that petitioner was under duress or subjected to any coercive police activity at the time of his statement and recommended that the district court deny the motion, [Doc. 231]. Petitioner objected to the report and recommendation, [Doc. 237], and this Court, upon *de novo* review, agreed with the magistrate judge's conclusion and denied petitioner's motion to suppress, [Doc. 250].

Petitioner's retrial began on April 11, 2006. At the close of the government's proof, the Court entered a judgment of acquittal as to Count Four and submitted the remaining counts of the indictment to the jury. The jury acquitted petitioner on Count Three and returned guilty verdicts as to the remaining four counts, [Doc. 271]. On July 21, 2006, the Court sentenced petitioner to a term of 490 months of imprisonment, [Doc. 287]. Petitioner timely appealed to the Sixth Circuit Court of Appeals and his convictions and sentence were affirmed on August 20, 2007, [Doc 304]. The instant timely § 2255 motion followed.

## II. Factual Background

The following statement of facts is taken from the government's response in opposition to the petitioner's § 2255 motion:

> During petitioner's second trial, his wife Linda Cody testified that she and petitioner were using crack cocaine prior to the charged robberies. (R. 294, Trial Tr., vol. II, at 3.) She testified that petitioner drove her to Hurdy Gurdy Video on February 15, 2004, and that she robbed the store at gunpoint to get money to purchase crack cocaine.1 (*Id.* at 5-10.)
>
> Three days later, on February 18, 2004, the Codys had run out of money to buy drugs or to repay their supplier. (*Id.* at 12.) Because they had no legitimate source of income, they decided to rob a bank. (*Id.* at 13.) They gathered guns, motorcycle helmets, and jackets, bought a Chevy decal at Auto Zone and placed it on their son's Ford Explorer, then covered the license plate with duct tape and drove around looking for a target. (*Id.* at 13-14.) Wearing motorcycle

3

helmets and dark coats, and brandishing firearms, petitioner and his wife burst into the Greene County Bank; petitioner carried an assault rifle and Linda Cody wielded a pistol. (*Id.* at 15-16, 43-44, 53.) The Codys demanded cash and pointed their guns at bank tellers Amy Luttrell and Kathy Moore, who handed over the money from their cash drawers, including bait money equipped with a dye pack. (*Id.* at 44, 53-54.) Meanwhile, a customer entered the bank, and the Codys ordered her at gunpoint to get down on the floor. (*Id.* at 53.)

After receiving the money, the Codys left the bank. As they did so, teller Luttrell and bank customer Kelly Rader observed that the getaway vehicle was a dark blue or green sports utility vehicle that had tape over the license plate and a Chevy emblem in the back window. (*Id.* at 44-45, 53.)

Linda Cody testified that, when they were driving away, the dye pack exploded, coloring or otherwise damaging much of the money. (*Id.* at 17.) The Codys took the money home and tried to salvage as much money as possible, cutting off damaged portions and bleaching the rest, and then used some of the money to pay their drug debts and purchase more crack cocaine. (*Id.*)

When the Codys realized that their son Marshall had seen the dyed money, they told him what they had done and made him help them count the money; they also gave him two hundred dollars. (*Id.* at 19; R. 293, Trial Tr., vol. I, at 64-68, 71.) Petitioner told him they removed a floor mat from his Explorer because the dye pack exploded on it. (R. 293, Trial Tr., vol. I, at 70.) Petitioner and Linda Cody then went to a hotel to smoke crack. (R. 294, Trial Tr., vol. II, at 20.)

Two days after the bank robbery, Marshall Cody was at a grocery store when a law enforcement officer approached him and sought permission to search his Explorer, which resembled the getaway vehicle. (R. 293, Trial Tr., vol. I, at 76; R. 294, Trial Tr., vol. II, at 59-60, 78-79.) Marshall Cody agreed that officers could search his vehicle and accompany him to the house he shared with his parents. Once there, Marshall allowed the officers to search his bedroom and the common areas of the residence; they observed money clippings and guns that matched the description of the firearms used in the bank robbery. (R. 294, Trial Tr., vol. II, at 60-61, 79; R. 293, Trial Tr., vol. I, at 77.) The officers subsequently obtained a search warrant for the remainder of the house and for a camping trailer parked in the front yard. (R. 293, Trial Tr., vol. I, at

4

77; R. 294, Trial Tr., vol. II, at 62, 80.) While executing the warrant, officers seized two motorcycle helmets, a black leather jacket, a long black coat, firearms, money clippings, and a bag of dye-stained cash. At trial, Investigator Jeff Morgan testified that, in his recollection, the motorcycle helmets and the black jacket were found in the camping trailer, while the black coat and the bag of marked cash was found in petitioner and Linda Cody's bedroom. (R. 294, Trial Tr., vol. II, at 62-63.) Marshall Cody testified that officers recovered both coats from the camping trailer. (R. 293, Trial Tr., vol. I, at 78.)

Petitioner was subsequently arrested and, when interviewed, confessed his involvement in two robberies. At trial, Greene County Sheriff Steve Burns testified about the circumstances of that confession and introduced the audio recording of it. (R. 294, Trial Tr., vol. II, at 81-82.) In his statement, petitioner described the video store robbery and the bank robbery, explaining that he and his wife decided to rob a bank so that they could pay their drug supplier and buy more crack cocaine. He said that they borrowed their son's Explorer, wore dark coats and motorcycle helmets, and brandished firearms at the tellers and bank patrons while demanding money. Once the tellers complied, the Codys left in the Explorer, where the dye-pack exploded, staining the money and a floor mat. Petitioner also said that he and his wife went to their residence and attempted to clean the money or cut off the dye-stained portions, even involving their son in counting the money once they realized that he had seen evidence of the bank robbery. (*Id.*) Sheriff Burns testified that, during the recorded confession, petitioner identified the assault rifle that the officers had seized from his residence as the firearm he used to rob the Greene County Bank. (*Id.* at 84.) Petitioner also identified a stained vehicle floor mat as the one from the Explorer on which the dye pack exploded. (*Id.* at 85.)

Around 1:40 a.m. on March 21, 2004, Officer Thomas McCauley was guarding petitioner at Laughlin Memorial Hospital – petitioner had claimed chest pain – when petitioner picked up a hard plastic mug and hit McCauley in the face with it, shattering the mug and cutting McCauley. (R. 293, Trial Tr., vol. I, at 45-46.) While McCauley was stunned and bleeding, petitioner attacked him, wrestling him to the floor. (*Id.* at 47, 49-50.) During the ensuing struggle, petitioner took McCauley's service pistol and ran from the hospital, thereby escaping from custody. (*Id.* at 47.) At the time, petitioner was wearing jail-issued clothing that resembled hospital scrubs. (*Id.* at 48.) Several witnesses testified at trial that McCauley's face and uniform were covered in blood after the incident. (*Id.* at 42,

5

55-56.)

Around 4:00 p.m. on the afternoon after petitioner escaped, Deputy U.S. Marshal Karen Burke was on surveillance outside the Cody residence when Marshall Cody drove up in his Explorer. (*Id.* at 56-57.) The vehicle slowed and Marshall Cody appeared to be "acting funny." (*Id.*) Burke approached, saw something in the back seat, and asked who was in the back seat. (*Id.* at 57.) Marshall Cody said it was his father. (*Id.*) Burke then saw that petitioner was wedged between the back seat and the front seat. (*Id.*) The service pistol that petitioner had taken from McCauley was found under the front seat, about two inches from petitioner's hand as he hid in the back seat. (*Id.* at 58.)

Marshall Cody testified at trial that, after his escape, petitioner called and asked for a ride. (*Id.* at 81-82.) Marshall agreed and drove petitioner to North Carolina and back. (*Id.*) During the trip, petitioner described how he hit McCauley with a cup and took his gun. *(Id.* at 82-83.)

### III. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity,

6

are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

7

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3rd Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be

8

established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

A petitioner such as Cody procedurally defaults a claim which was not first raised by the petitioner on direct appeal. *Vanwinkle v. United States*, —F.3d —, 2011 WL 1775676 (6th Cir. 2011). A procedurally defaulted claim may only be raised "if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998). The bar faced by a petitioner in excusing his procedural default is "intentionally high . . ., for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).

IV. **Analysis and Discussion**

The petitioner raises four general grounds for relief in his § 2255 motion. His alleged grounds and the supporting facts set forth by him are as follows:

> **Ground One**: Detectives From The Greeneville Sheriff's Department Falseified [Sic] Affidavit To Judge For Circuit Court.
>
> a. **Supporting Facts**:

Affidavit from Sheriff Department dated February 21, 2004 to the Circuit Court, John Wilson states that the trench coat used at trial was in the bedroom of Talmadge Cody. Affidavit by government's witness recived [sic] by Talmadge Cody on or about March 28, 2008 states that there was no coat nor was there any money in the bedroom as the Greene County Sherriff [sic] Department falsafied [sic] to in there [sic] affidavit to Circuit Judge.

Affidavit sent to Talmadge Cody 3-28-08 by government witness Linda Cody.

**Ground Two**: Prosicutoril [sic] Misconduct by A U.S.A. Robert Reeves

    **a.    Supporting Facts**

AUSA Robert Reeves knowingly and willingly introduced testimony and evidence at trial of Talmadge Cody that he knew to be false. He was informed it was false by his own witness. The AUSA Robert Reeves conspired with at least two detectives of the Greene County, Tennessee Sheriff Department in order to put this falsified testimony and evidence to jury at trial.

**Ground Three**: The Constitutionality of U.S. Criminal Code Title 28 Public Law 80-772.

    **a.    Supporting Facts:**

H.R. 3190 was passed by the House on May 12, 1947. Congress adjourned befor [sic] the bill was passed by the Senate. The bill could not become law without both House and Senate voteing [sic] on bill which making P.L. 80-72 invalid and in turn the District Courts clearly lack jurisdiction.

**Ground Four**: Errer [sic] by District Court for Denying Pretrial Motion to Suppress Statement

    **a.    Supporting Facts:**

Only a few short hours befor [sic] the arrest and statement to law enforcement at the Greene County Sheriff Department defendant Talmadge Cody taken the sleeping medication (Ambein). Recently

10

> a form has been released about the side affects of this medication. In this report one side affect is changes in behavior and thinking processes another side affect is amnesia. And several other side affects. Defendant should not have been questioned.

Cody has not filed any memorandum in support of his motion; however, he does attach several documents to his motion. The only relevant document attached to the motion is the affidavit of petitioner's wife and co-defendant, Linda Cody. Linda Cody's affidavit, in summary, contains the following factual allegations. First of all, it alleges that "our camper" (presumably that of Linda Cody and petitioner) was broken into by the Greene County Sheriff's Department on February 21, 2004. Secondly, she alleges that a black duster overcoat was removed, (presumably from the camper), and placed in the bedroom of the camper. Linda Cody claims that she informed AUSA Reeves that the black duster was in the camper and not in the bedroom of the trailer and was told by him that it made no difference in the trial. Thirdly, Linda Cody alleges that she informed AUSA Reeves that there was no money left on the bed in the bedroom of the trailer although the testimony from the Sheriff's Department states otherwise. Fourth, she asserts that at the time she made a statement to detectives from the Greene County Sheriff's Department she noticed an arrest form on the left hand corner of the desk with the name of her son, Marshall Cody, with a signature on it. When she tried to read the form, it was covered by the detective except for Marshall Cody's signature. Fifth, Linda Cody alleges that the tape recorder was turned off by the detective several times during the taking of her statement, that she was told to tell them on the recorder that she stopped at a store on Highway 70 and 11-E but that she did not actually remember stopping at those stores. Lastly, Linda Cody alleges that she was told that if Talmadge Cody was found not guilty Marshall, her son, could be charged with the bank robbery, and that is why she agreed to testify. The affidavit is dated March 28, 2008, and signed by Linda Cody; it does not appear to have been

11

prepared for the purposes of petitioner's § 2255 motion, but rather states that the affidavit is in support of Linda Cody's motion for appointment of counsel. [1]

The Court will address each of petitioner's grounds in turn.

### A.     Falsified "Affidavit" to Circuit Court

As an initial matter, it is somewhat unclear just what Cody is referring to here. As noted above, officers investigating the case encountered Marshall Cody at a grocery store on February 20, 2004. At that time, Marshall Cody agreed that the officers could search his vehicle and accompanied them to his house, where he consented to the search of his bedroom and the common areas of the residence. During that search, officers observed money clippings and guns that matched the description of the firearms used in the bank robbery. The officers then obtained a search warrant for the remainder of the house and for a camping trailer in the front yard. There is no reference to the trench coat in the affidavit which accompanied the application for the search warrant. In fact, it had not been discovered at that time. On the search warrant return, however, officers apparently indicated that the coat had been found in petitioner's bedroom. Thus, it appears that the "affidavit" to which Cody refers is in reality the search warrant return.

Petitioner has procedurally defaulted this claim. It was neither raised in the district court nor on direct appeal. As set forth above, a petitioner who procedurally defaults on a claim and raises it for the first time on collateral review must demonstrate "cause" and "actual prejudice" resulting from the error, or actual innocence. Cody does not assert actual innocence. The only cause he asserts for his failure to raise this claim earlier is his assertion that he did not learn of the issue until he received an affidavit from Linda Cody on March 28, 2008. To the extent Cody attempts to

---

[1] It is unclear why Linda Cody would be seeking the appointment of counsel in March, 2008.

12

demonstrate "cause" for the default by asserting newly discovered evidence, his claim fails for several reasons. First of all, the evidence is not truly newly discovered. Linda Cody testified at trial and could easily have been asked about the location of the coat if it in fact was a matter relevant in the case and, more importantly, petitioner's son, Marshall Cody, testified at trial that he thought both coats had been recovered from the camping trailer. Clearly Cody was on notice and could have discovered potential discrepancies between the trial testimony and the affidavit and the search warrant return at that time. He has not established cause to excuse his procedural default. Furthermore, even if Cody could establish cause, he cannot establish actual prejudice. As the government notes in its response, the question of the precise location of the coat was irrelevant to the determination of petitioner's guilt. It cannot be disputed that the coat was found on his property either in his bedroom or in the camper in his front yard; therefore, petitioner has not shown that he sustained any prejudice.

To the extent petitioner claims that counsel was somehow ineffective with respect to this issue, that claim lacks any merit as well. Even if petitioner could make out an arguable claim on defective performance, he cannot establish that such performance had any effect on the judgment. There is no reasonable probability that the result of the proceeding would have been different otherwise. Petitioner cannot satisfy either prong of the *Strickland* test with respect to this issue.

### B. Prosecutorial Misconduct

The essence of Cody's claim here is that AUSA Reeves knowingly and willingly introduced false testimony at the trial of Cody. He further alleges, without any supporting facts, that Reeves conspired with Greene County deputies to put the false evidence into the record at the trial. Nothing in this record establishes that AUSA Reeves introduced any testimony at trial which he knew to be

13

Case 2:04-cr-00014-JRG   Document 328   Filed 08/08/11   Page 13 of 17   PageID #: 240

false. At the very best, the affidavit of Linda Cody establishes that she informed the United States Attorney that her recollection of events differed from the testimony of officers employed by the Greene County Sheriff's Department. That falls far short of establishing the knowing use of false testimony by the prosecutor. Beyond that, Cody offers no support for his claim of prosecutorial misconduct. Likewise, he does not set out any facts which would even remotely support his claim of a conspiracy between the prosecutor and detectives of the sheriff's department to introduce false evidence and testimony against him.

Cody has also procedurally defaulted this claim for the same reasons he has procedurally defaulted the prior one. Furthermore, to the extent Cody also claims ineffective assistance of counsel relative to this issue, that claim obviously fails as well. There is nothing in the record to suggest that counsel would have known, or had any reason to know, about the conflict between Linda Cody's statements and those of other witnesses at trial. Furthermore, as set forth above, there is not even a remote likelihood that knowledge by the jury of any conflict between Linda Cody's testimony and that of the officers would have had any effect on the outcome of this trial. Linda Cody is a convicted felon who was suffering from a serious drug addiction during the time of the events in question. There is nothing to suggest in this record that, even if relevant, the jury would have believed the testimony of Linda Cody over that of the deputies employed by the Greene County Sheriff's Department, or, if they had, that it would have made any difference. This issue is completely without merit.

C. **Constitutionality of 18 U.S.C. § 3231**

14

As with the prior two issues, Cody has procedurally defaulted this claim as well. Although he alleges that he only learned the information on this issue approximately seven months before the filing of his petition through a press release, that does not establish cause for his failure to raise the issue at trial or on appeal. Even if he could establish cause to excuse his procedural fault, he clearly cannot establish any actual prejudice related to this issue because the argument is patently frivolous. So far as this Court can tell, the argument raised by the petitioner here has been found to be completely baseless by every federal court to consider it. *See Mayfield v. Attorney General*, 2008 WL 2130234, at *5, 10.2 (E.D. Tex.); *Garcia-Becerra v. United States*, 2008 WL 2944558, at *3 (S.D. Tex.); *United States v. Harbiney*, 2007 WL 2777777, at *5 (S.D. Tex.); *United States v. Felipe*, 2007 WL 2207804 (E.D. Pa. 2007); *United States v. Lawrence*, 2006 WL 250702 (N.D. Ill.).

**D. Voluntariness of Petitioner's Statement**

As noted above, petitioner moved to suppress his statements to law enforcement officers which were made on February 21, 2004, arguing that his mental and emotional state at the time rendered his statements unknowing and involuntary. The Magistrate Judge conducted an evidentiary hearing, heard testimony from an officer who participated in the interview, reviewed the audio recording of the interview, and found no evidence to suggest that defendant was under duress or subjected to any coercive activity. Indeed, the Magistrate Judge found that petitioner's "conversation with law enforcement interrogators was matter-of-fact and rather cordial, under the circumstances." After petitioner objected to the Magistrate Judge's conclusion, this Court considered the issue *de novo*, agreed with the Magistrate Judge's conclusion and denied petitioner's motion to suppress. Petitioner now claims that "a few short hours" before his arrest and statement he had taken the sleeping medication, Ambien, and that he has recently become aware of

15

information which suggests possible side effects from the medication that may include changes in behavior and thinking processes. He apparently argues that his statement was somehow unknowing and involuntary and should have been suppressed on that basis. Interestingly, he does not attach the report about the side effects which he references in his petition nor does he specifically allege that he was in fact suffering from any side effects at the time his statement was taken.

Petitioner has procedurally defaulted this issue as well. Presumably, any side effects related to this medication were well established at the time of trial and the Court sees no reason why this issue could not have been raised at the time, had Cody simply informed his lawyer that he was on the medication. He cannot, therefore, establish cause to excuse his procedural default nor can he show actual prejudice since he does not claim that he was in fact suffering from those side effects. That is especially true in the face of this Court's having considered the voluntariness of the statement on two prior occasions and concluding, on each occasion, that the record established that petitioner's statement was knowing and voluntary. This issue lacks any merit.

## V.    Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and his motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of

appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined each of the petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability as to each claim raised.

A separate judgment will enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE